UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKERS WARRANTY GROUP,
INC. d/b/a CENTRICITY, a Florida
corporation,

    Plaintiff,

v.

BOOM! TECHNOLOGIES INC., a
Delaware corporation,

    Defendant.
_____/

Case No.    8:25-cv-731

## COMPLAINT

Plaintiff, BANKERS WARRANTY GROUP, INC. d/b/a CENTRICITY ("Centricity"), through undersigned counsel, hereby sues Defendant, BOOM! TECHNOLOGIES INC. ("BTI"), and alleges as follows:

## THE PARTIES

1. Centricity is a Florida corporation, registered with the Florida Department of State Division of Corporations, authorized to transact business in the state of Florida, with its principal place of business in Pinellas County, Florida.

2. BTI is a Delaware corporation with its principal place of business in Washington County, Oklahoma, doing business nationwide, including in Pinellas County, Florida.

{00093351:2}

1

## **JURISDICTION AND VENUE**

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds the sum of $75,000.00.

4. This Court may exercise personal jurisdiction over BTI under Florida's Long-Arm Statute, Fla. Stat. § 48.193(1) and the Due Process clause of the Fourteenth Amendment because:

   a. The Causes of Action alleged herein arise out of BTI's unlawful conduct within the state of Florida that were directed toward and reached persons in Florida which caused injury to persons located in Florida and this Judicial District. Specifically, BTI's unlawful conduct caused injury to Centricity, a Florida corporation, which caused a reduction of Centricity's monetary assets, which are held in a Florida bank account; and

   b. The Causes of Action alleged herein arise out of BTI's engagement in a general course of business activity in the State of Florida for pecuniary gain, including (i) entering into a binding agreement with Centricity to market, promote and sell Centricity service contracts to clients and customers nationwide, including in the state of Florida, (ii) entering into a binding agreement with Centricity in which BTI submits

to the exclusive jurisdiction of the state courts of the state of Florida and any United States District Court sitting in Florida

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391, because a substantial part of the events and/or omissions giving rise to the Causes of Action have occurred in this Judicial District, including the harm caused by BTI's unlawful conduct, which caused injury to Centricity in this Judicial District through the loss of corporate assets in Centricity's Florida-based bank account.

## FACTS COMMON TO ALL COUNTS

6. Centricity is a professional provider and administrator of extended service contracts on various electronic consumer products.

7. BTI is a mobile network operator, aggregator and enabler that offers electronic consumer products to end-users throughout the United States.

### The Service Contract Program Agreement

8. On or about February 22, 2024, Centricity and BTI entered into a Service Contract Program Agreement (the "Program Agreement") whereby Centricity agreed to offer extended service contracts for products sold to and/or by BTI's clients and customers in exchange for BTI's marketing of Centricity's services and payment to Centricity for each Centricity service contract sold. A true and correct copy of the Program Agreement is attached hereto as **Exhibit 1**.

9. Specifically, the Program Agreement provides, in relevant part:

   a. Centricity shall be the "sole and exclusive Service Contract provider" for BTI and BTI's business partners, and BTI agrees not to enter into any agreements with any other parties for provision, underwriting or administration of service contracts in the United States;

   b. BTI shall "in good faith market, offer and promote the Centricity Service Contract Program" to all of its business partners, and shall use "best efforts to cause such Business Partners to sell the Program to their customers"; and

   c. Centricity shall issue to BTI a lump-sum payment of $500,000 within fourteen (14) days following execution of the Program Agreement, and another lump-sum payment of $500,000 within fourteen (14) days of BTI's launch of Centricity's products (collectively referred to as the "Program Launch Fund") to be utilized by BTI to support activities, IT development, marketing, and retailer commissions. In exchange, BTI agrees to repay all Program Launch Funds received in the event that (i) BTI ceases to conduct business, (ii) BTI fails to meet identified sales thresholds provided for in the Program Agreement, or (iii) there are material changes in BTI's management.

10. Moreover, the Program Agreement allows the parties to terminate the Program Agreement in the event of (i) material breach of the Program Agreement by the other party, or (ii) a material decline in BTI's sales volume as a result of BTI's failure to use commercially reasonable efforts to sell Centricity contracts to BTI's clients and customers.

11. In the event of termination, each party has an obligation to account for and pay the other party all amounts owed under the Agreement and return all property of the other party, including but not limited to, all "Confidential Information" as defined by the Program Agreement.

12. Shortly after entering into the Program Agreement, Centricity issued BTI the first $500,000 lump sum payment for the Program Launch Fund, pursuant to the Program Agreement.

13. On or around April 26, 2024, following assertions from BTI that it launched its program selling Centricity service contracts, including that they were "live," Centricity issued to BTI the second $500,000 lump sum payment for the Program Launch Fund, pursuant to the Program Agreement. *See* April 26, 2024 e-mail correspondence, **Exhibit 2**.

14. Upon information and belief and unbeknownst to Centricity, prior to entering into the Program Agreement, BTI had no intention of utilizing the Program Launch Funds to "support activities, IT development, [and] marketing" of Centricity

service contracts, but rather, entered into the Program Agreement to obtain the Program Launch Funds to use for BTI's own purposes and for reasons unauthorized by the Program Agreement.

15. In fact, upon information and belief, at the time BTI claimed its product and platform had already launched in order to obtain the Program Launch Funds, BTI had not even fully developed its program and platform, intending to use the Program Launch Funds to do so.

**BTI Fails to Use Commercially Reasonable Efforts to Sell Centricity Services**

16. Shortly after BTI's purported "launch", it became readily apparent that BTI was not utilizing the Program Launch Fund for the purposes required by the Program Agreement.

17. By June of 2024, BTI had sold only two (2) Centricity service contracts, despite "launch[ing]" its platform to sell Centricity service contracts two (2) months prior.

18. Almost immediately, Centricity contacted BTI requesting information regarding its sales strategy, growth plan, and plans to increase its sales volume.

19. On June 20, 2024, BTI responded to Centricity promising that it would "sell the mess out of this product" and that BTI was "just getting started[,]" promising to have a concrete sales plan and projects by the end of that week. *See* June 20, 2024 e-mail correspondence, **Exhibit 3**.

20. On June 30, 2024, BTI sent an email to Centricity containing its sales plan, which included (i) selling Centricity insurance plans through online sales by July of 2024, (ii) opening in 6000 storefronts by August 27, 2024, and (iii) marketing Centricity services through promotions with popular celebrities such as Travis Scott and Ice Spice, who BTI claimed had been "officially signed" by BTI to do so. *See* June 30, 2024, correspondence from BTI attached hereto as **Exhibit 4**.

21. BTI failed to carry out any of the actions it committed to in its June 30, 2024, correspondence.

22. On October 1, 2024, with BTI's sales falling significantly short of projections, Centricity requested documentation from BTI to support its expenditures and sales performance. Despite several follow-ups on October 14, 2024 and November 6, 2024, BTI never furnished the requested information.

23. On December 9, 2024, as BTI's sales continued to perform well-below even modest projections, Centricity again requested documentation from BTI to support BTI's expenditures and sales performance, and requested it provide such information on or before December 15, 2024. In the December 9, 2024, correspondence, Centricity also requested BTI provide any evidence whatsoever of BTI's efforts to market or sell Centricity's service. *See* **Exhibit 5**.

24. Again, BTI failed to respond to Centricity's December 9, 2024, correspondence.

25. Shortly thereafter, Centricity discovered that BTI secretly entered into an agreement with one of Centricity's competitors, Mulberry Wireless, to market and sell a device warranty plan similar to Centricity's.

### Termination of the Program Agreement

26. On January 28, 2024—after BTI (i) sold just 124 service contracts since entering into the Program Agreement, (ii) refused to provide any evidence of its expenditures or efforts to market or sell Centricity's services, and (iii) entered into a contract with one of BTI's competitors, in violation of the Program Agreement—Centricity terminated the Program Agreement. A true and correct copy of the January 28, 2025, termination letter is attached hereto as **Exhibit 6**.

27. In the termination letter, Centricity demanded that BTI repay the $1,000,000 Program Launch Fund payments within five (5) days, pursuant to sections 10(b) and 23(c) of the Program Agreement.

28. On February 24, 2025, Centricity again demanded BTI repay the $1,000,000 Program Launch Fund payment pursuant to sections 10(b) and 23(c) of the Program Agreement and that BTI return all materials related to Centricity service contracts to Centricity pursuant to section 23(b) of the Program Agreement. A true and correct copy of the February 24, 2025 demand letter is attached hereto as **Exhibit 7**.

29. Contemporaneously, Centricity served on BTI a Civil Theft Notice pursuant to Florida Statute § 772.11, demanding BTI pay treble damages in the amount of $3,000,000 as a result of its civil theft of the Program Launch Fund payment. A true and correct copy of the February 24, 2025, Civil Theft Notice is attached hereto as **Exhibit 8**.

30. To date, BTI has not returned any of the Program Launch Funds to Centricity, nor has BTI returned any materials related to Centricity service contracts.

31. All conditions precedent to bringing this action have occurred, been satisfied, or have otherwise been waived.

32. Centricity has retained the undersigned law firm to represent its interests in this matter and is obligated to pay said law firm a reasonable fee therefor.

## COUNT I
## BREACH OF CONTRACT

33. Centricity realleges and incorporates paragraphs 1 through 32 as if fully set forth herein.

34. This is an action for damages by Centricity against BTI for breach of the Program Agreement.

35. On or about February 22, 2024, Centricity and BTI voluntarily entered into the Program Agreement.

36. Centricity complied with all of its obligations under the Program Agreement.

37. BTI materially breached the Program Agreement by (i) failing to "in good faith market, offer and promote the Centricity Service Contract Program" using "commercially reasonable efforts", (ii) entering into an agreement with one of Centricity's competitors to market and sell similar service contracts to those offered by Centricity, (iii) utilizing Program Launch Funds for activities other than "to support activities, IT development, marketing, and retailer commissions", (iv) upon termination of the Program Agreement, failing to repay to Centricity all Program Launch Funds Centricity previously provided, and (v) upon termination of the Program Agreement, failing to return all materials related to Centricity service contracts to Centricity.

38. As a direct and proximate result of BTI's breaches, Centricity has incurred damage, including but not limited to, the amount of the Program Launch Funds paid to BTI, additional payments and support Centricity offered to BTI that were not utilized appropriately by BTI, and other breach of contract damages.

WHEREFORE, Centricity respectfully requests that this Court enter judgment against BTI for damages, including all compensatory, special and consequential damages, costs, interest and all such other relief as the Court deems appropriate under the circumstances.

## COUNT II
## CONVERSION

39. Centricity realleges and incorporates paragraphs 1 through 32 as if fully set forth herein.

40. This is an action by Centricity against BTI for conversion.

41. BTI, knowingly, and through false pretenses, obtained and used Program Launch Funds in the amount of $1,000,000, and knowingly deprived Centricity of the Program Launch Funds with the intent to permanently deprive Centricity of the right to the money and benefit thereof, for BTI's own use, for purposes other than those authorized by Centricity.

42. Specifically, BTI induced Centricity to issue the Program Launch Funds under the false pretense that its product was already complete and that such funds would be used to market, promote, and sell Centricity service contracts, knowing that BTI had no intention to do so.

43. Rather, BTI used the Program Launch Funds for its own purposes, including to create and develop its own product, and to market, promote and sell similar service contracts from one of Centricity's competitors, with the intention of temporarily or permanently depriving Centricity of the right to and benefit of the Program Launch Funds.

44. To date, despite Centricity's demand, BTI has failed to return to Centricity any part of the Program Launch Funds.

45. As a direct and proximate result of BTI's actions, Centricity was and continues to be deprived of its right to the Program Launch Funds, and therefore has been injured as a result of such actions.

WHEREFORE, Centricity respectfully requests that this Court enter judgment against BTI for conversion, and award Centricity damages, including compensatory, special, and consequential damages, costs, interest, and all such further relief as the Court deems appropriate under the circumstances.

## COUNT III
## CIVIL THEFT

46. Centricity realleges and incorporates paragraphs 1 through 32 as if fully set forth herein.

47. This is an action by Centricity against BTI for civil theft pursuant to Florida Statute § 772.11.

48. BTI unlawfully, knowingly, and through false pretenses, obtained and used Program Launch Funds in the amount of $1,000,000, and knowingly deprived Centricity of the Program Launch Funds with the intent to permanently deprive Centricity of the right to the money and benefit thereof, for BTI's own use, for purposes other than those authorized by Centricity.

49. Specifically, BTI induced Centricity to issue the Program Launch Funds under the false pretense that BTI's product was fully developed and had been

launched, and that such funds would be used to market, promote, and sell Centricity service contracts, knowing that BTI had no intention to do so.

50. Rather, BTI used the Program Launch Funds for its own purposes, including to develop its own product, and to market, promote and sell similar service contracts from one of Centricity's competitors, with the intention of temporarily or permanently depriving Centricity of the right to and benefit of the Program Launch Funds.

51. BTI performed these acts with felonious intent—i.e., with the knowing intent to utilize Centricity's funds for unauthorized purposes.

52. Pursuant to Florida Statute § 772.11, Centricity served a statutory Civil Theft Notice on BTI on February 24, 2025. *See* **Exhibit 9**.

53. To date, despite Centricity's demand, BTI has failed to return to Centricity any part of the Program Launch Funds.

54. As a direct and proximate result of BTI's actions, Centricity was and continues to be deprived of its right to the Program Launch Funds, and therefore has been injured as a result of such actions.

55. Centricity is entitled to treble damages in the minimum amount of $3,000,000 for the theft of its money committed by BTI.

56. Centricity is entitled to an award of attorneys' fees and costs pursuant to Florida Statute § 772.11.

WHEREFORE, Centricity respectfully requests that this Court enter judgment against BTI for civil theft pursuant to Florida Statute § 772.11, and award Centricity damages, including compensatory, special, consequential, and treble damages, as well as all attorneys' fees, costs and interest incurred in bringing this claim, and for all such further relief as the Court deems appropriate under the circumstances.

**CENTRICITY HEREBY DEMANDS A TRIAL BY JURY**

Dated: March 25, 2025.

> */s/ Ethan J. Loeb*
> **ETHAN J. LOEB**
> Florida Bar Number 0668338
> EthanL@BLHTLaw.com
> KerriR@BLHTLaw.com
> Eservice@BLHTLaw.com
> **ALLISON C. DOUCETTE**
> Florida Bar Number 085577
> AllisonD@BLHTLaw.com
> HeatherW@BLHTLaw.com
> **ELLIOT P. HANEY**
> Florida Bar No. 1018829
> ElliotH@BLHTLaw.com
> MarjorieP@BLHTLaw.com
> **BARTLETT, LOEB, HINDS THOMPSON & ANGELOS**
> 1001 Water Street, Suite 475
> Tampa, Florida 33602
> Tel. (813) 223-3888
> Fax: (813) 228-6422
> ***Attorneys for Plaintiff***