UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BANKERS WARRANTY GROUP,
INC., d/b/a CENTRICITY,

    Plaintiff,

v.                                  Case No: 8:25-cv-731-CEH-SPF

BOOM! TECHNOLOGIES, INC.,

    Defendant.

---

### ORDER

This matter comes before the Court on Defendant Boom! Technologies, Inc.'s

Motion to Dismiss the Complaint (Doc. 13) and Plaintiff Centricity's response (Doc.

16). In its motion, Defendant requests dismissal of Plaintiff's complaint for failure to

state a claim under Fed. R. Civ. P. 12(b)(6) and for failing to plead fraud allegations

with particularity to satisfy Fed. R. Civ. P. 9(b). The Court, having considered the

motion and being fully advised in the premises, will deny the motion.

### I.    BACKGROUND[1]

Plaintiff Centricity is a Florida corporation with its principal place of business

in Pinellas County, Florida. Doc. 1 ¶ 1. Centricity is a professional provider and

---

[1] Unless otherwise stated, the statement of facts is derived from the Complaint (Doc. 1), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

administrator of extended service contracts on various electronic consumer products. *Id.* ¶ 6.

Defendant Boom! Technologies, Inc. ("BTI") is a Delaware corporation with its principal place of business in Washington County, Oklahoma. *Id.* ¶ 2. BTI is a mobile network operator, aggregator, and enabler that offers electronic consumer products to end-users throughout the United States. *Id.* ¶ 7.

On February 22, 2024, Centricity and BTI entered into a Service Contract Program Agreement (the "Program Agreement") whereby Centricity agreed to offer extended service contracts for products sold to and by BTI's clients and customers in exchange for BTI's marketing of Centricity's services and payment to Centricity for each Centricity Service contract sold. *Id.* ¶ 8. The Program Agreement provides that Centricity shall be the "sole and exclusive Service Contract provider" for BTI and BTI's business partners and BTI shall "in good faith market, offer and promote the Centricity Service Contract Program" to all its business partners and use "best efforts to cause such Business Partners to sell the Program to their customers." *Id.* ¶ 9. The Program Agreement also provides that Centricity shall issue to BTI a lump-sum payment of $500,000 within fourteen days following execution of the Program Agreement and another lump-sum payment of $500,000 within fourteen days of BTI's launch of Centricity's products (collectively referred to as the "Program Launch Funds"). *Id.* The Program Launch Funds were to be utilized by BTI to support activities, information technology ("IT") development, marketing, and retailer commissions. *Id.* BTI agreed to repay the Program Launch Funds if it ceases to

2

conduct business, fails to meet sales goals in the Program Agreement, or has material changes in its management. *Id.*

Shortly after entering into the Program Agreement, Centricity issued the first lump sum payment for the Program Launch Funds. *Id.* ¶ 12. On April 26, 2024, Centricity emailed BTI asking it to confirm once it officially launched the program selling Centricity service contracts. *Id.* ¶ 13; Doc. 1-4 at 1. BTI responded the same day stating that they were "live." Doc. 1 ¶ 13; Doc. 1-4 at 1. As a result, Centricity issued the second $500,000 lump sum for the Program Launch Funds. Doc. 1 ¶ 13.

Unbeknownst to Centricity and prior to entering into the Program Agreement, BTI had no intention of utilizing the Program Launch Funds for its intended purposes, but rather, entered into the Program agreement to obtain the Program Launch Funds to use for its own purposes. *Id.* ¶ 14. At the time that BTI claimed the program selling service contracts had launched, it had not fully developed the program and platform. *Id.* ¶ 15.

By June 2024, BTI had sold two Centricity service contracts since its launch in April 2024. *Id.* ¶ 17. Centricity contacted BTI concerned about BTI's sales strategy and growth plan. *Id.* ¶ 18. On June 20, 2024, BTI responded that it would "sell the mess out of this product" and it was "just getting started," and promised to have a plan by the end of that week. *Id.* ¶ 19; Doc. 1-5 at 1. On June 30, 2024, BTI emailed Centricity its sales plan, which included selling Centricity insurance plans through online sales by July of 2024, opening 6,000 storefronts by August 27, 2024, and marketing Centricity services through promotions with popular celebrities such as Travis Scott

3

and Ice Spice, who BTI claimed had been "officially signed" by BTI to do so. Doc. 1 ¶ 20; Doc. 1-6. BTI failed to carry out any of the actions outlined in its June 30, 2024, email. Doc. 1 ¶ 21. Centricity later discovered that BTI secretly entered into an agreement with one of Centricity's competitors, Mulberry Wireless, to market and sell a device plan similar to Centricity's. *Id.* ¶ 25.

On January 28, 2024, Centricity terminated the Program Agreement and demanded that BTI repay the $1,000,000 from the Program Launch Funds. *Id.* ¶¶ 26–27; Doc. 1-6. BTI did not return any of the Program Launch Funds. Doc. 1 ¶ 30. Centricity now brings this action for damages against BTI for breach of the Program Agreement (Count I), conversion (Count II), and civil theft (Count III).

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

### III.   DISCUSSION

#### a.  Count I (Breach of Contract)

In its motion to dismiss, BTI seeks to dismiss Count I (Breach of Contract) for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 13 at 4–7. BTI argues that the Complaint fails to state the specific provision of the Program Agreement that it breached. *Id.* at 6. BTI maintains that as a result, the Complaint fails to provide it notice of the contractual duty that it was required to follow. *Id.*

Centricity responds that it properly pleaded the elements of a breach of contract claim. Doc. 16 at 3–6. It argues that the Complaint identified the provisions at issue even though it did not identify the specific section or paragraph number of the contract. *Id.* at 3–5. Centricity explains that it quotes the precise language of four different portions of the Program Agreement in the complaint and attaches the full Program Agreement as an exhibit to the Complaint. *Id.* at 6. It contends that these allegations are more than sufficient to put BTI on notice as to the provisions of the Program Agreement breached. *Id.*

A plaintiff claiming breach of contract under Florida law must allege "(1) a valid contract, (2) a material breach, and (3) damages.*" Nat'l Collegiate Student Loan Tr. 2006-4 v. Meyer*, 265 So. 3d 715, 719 (Fla. 2d DCA 2019). Florida's substantive law governs the dispute, however, the "claim for breach of contract must be pled in accordance

5

with federal standards." *Dawley v. NF Energy Saving Corp. of Am.*, No. 6:07-CV-872, 2007 WL 4116056, at *3 (M.D. Fla. Nov. 16, 2007) (citing *Follenfant v. Rogers*, 359 F.2d 30, 32 (5th Cir. 1966)).[2]

To assert a breach of contract claim, the plaintiff must put the defendant on notice of the breach of contract claim through factual allegations or by referencing the specific contractual provision allegedly breached by the defendant. *See Pharm. Dev. Grp., Inc. v. ANI Pharms., Inc.*, No. 8:16-CV-2416, 2016 WL 4992503, at *2 (M.D. Fla. Sept. 19, 2016). "Where the facts pleaded are insufficient to determine which of the provisions may have been breached, the claim cannot survive a motion to dismiss." *Gentry v. Harborage Cottages-Stuart, LLLP*, No. 08-14020-CIV, 2008 WL 1803637, at *3 (S.D. Fla. Apr. 21, 2008). The purpose of this requirement is that the pleading complies with the *Twombley* pleading standard. *George v. Wells Fargo Bank*, 13–80776–CIV., 2014 WL 61487, *4 (S.D. Fla. Jan. 8, 2014) ("The Amended Complaint does not identify which provision of the permanent loan modification has been breached and therefore runs afoul of *Twombly*.").

Here, the Complaint quotes portions of the contract that BTI breached. The Complaint provides the following quotes from the Program Agreement: Centricity shall be the "sole and exclusive Service Contract Provider" for BTI, BTI shall "in good faith market, offer and promote the Centricity Service Contract Program" to all of its

---

[2] The Eleventh Circuit adopted the decisions of the United States Court of Appeals for the Fifth Circuit that were handed down prior to October 1, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

business partners, BTI shall use "best efforts to cause such Business partners to sell the Program to their customers", and BTI shall use the Program Launch Funds "to support activities, IT development, marketing, and retailer commissions." Doc. 1 ¶¶ 9, 37. Centricity has also attached the Program Agreement to the Complaint, so these quoted portions can be cross-referenced to a specific provision in the Program Agreement. For example, the quote stating Centricity shall be the 'sole and exclusive Service Contract provider" can be cross-referenced to Section 7(b)(i) of the Program Agreement. Contrary to BTI's assertions, Centricity does not fail to identify the specific provision of the Program Agreement that was purportedly breached. Although Centricity does not provide the specific numerical sections that it alleges BTI breached in its Complaint, the quoted portions are still sufficient to place BTI on notice of the nature of the breach of contract claim. Centricity has sufficiently pled a breach of contract claim.

### b. Independent Tort Doctrine

Florida's independent tort doctrine provides that tort claims are barred where they are not independent of a breach of contract claim. *Freeman v. Sharpe Res. Corp.*, No. 6:12-CV-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013). Under Florida law, "a simple debt which can be discharged by the payment of money cannot generally form the basis of a claim for conversion or civil theft." *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). However, there are exceptions to this general rule. *See Pharma Funding, LLC v. FLTX Holdings, LLC*, No. 20-21103-CIV, 2021 WL 1166051, at *6 (S.D. Fla. Mar. 8, 2021), *report and recommendation*

7

*adopted*, No. 20-21103-CIV, 2021 WL 1165420 (S.D. Fla. Mar. 26, 2021). *Pharma Funding* highlights two situations where civil theft and conversion claims are not barred by the independent tort doctrine. *Id.* The first situation is when a defendant has "stolen or embezzled funds, which were entrusted to [it] by the plaintiff[], for their own benefit." *Id.* The second is "when a plaintiff owns funds and the money is given to the defendant to temporarily hold in a segregated and identifiable account, which the defendant then refuses to return." *Id.* at *7.

BTI argues that the conversion and civil theft claims should be dismissed pursuant to the independent tort doctrine. Doc. 13 at 7–9. Specifically, it contends that these claims are essentially that BTI did not use the Program Launch Funds as contemplated in Section 9(a) of the Program Agreement. *Id.* at 8–9. BTI argues that these allegations amount to nothing more than a breach of contract claim. *Id.*

Centricity responds that the independent tort doctrine does not apply. Doc. 16 at 6–9. The Complaint alleges that Centricity deposited $1,000,000 into the Program Launch Fund, to be accessed and utilized by BTI only to "support activities, IT development and marketing of Centricity service contracts[.]" Doc. 1 ¶¶ 12–14. The Complaint also alleges that BTI used the Program Launch Fund for an unauthorized purpose. *Id.* ¶ 14. Centricity argues these facts separate its conversion and civil theft claims from its breach of contract claim. Doc. 16 at 8–9.

In *Burke v. Napieracz*, 674 So. 2d 756, 758 (Fla. 1st DCA 1996), the Court found that the conversion and civil theft claims alleged acts independent from the contract claim. In that case, the defendant, pursuant to a contract, was to receive specifically

8

identifiable funds, deposit those funds in an identifiable bank account, and forward the funds to the plaintiff. *Id.* The defendant's failure to either deposit or forward those funds to the plaintiff would have constituted a breach of the contract. *Id.* The court held that since the defendant allegedly performed the "affirmative and intentional act of converting the funds to his own use by allegedly stealing the monies to which he was entrusted, there is not merely a breach of contract but a separate and independent tort." *Id.*

Here, Centricity alleges it provided BTI a specific set of funds for an express purpose under the Program Agreement and BTI then used those funds for a purpose beyond the agreement. Under the Program Agreement, BTI was to use the Program Launch Funds to market and sell Centricity service contracts. Doc. 1 ¶ 4. Specifically, the funds were to be used for "service contract program support activities, IT development, front-line messaging and marketing, retailer commissions, and engagement in relation to the service contract program." Doc. 1-3 at 9. BTI would breach the contract by neglecting to use the Program Launch Funds for these express purposes. However, Centricity alleges facts outside of this breach.

Like the plaintiff in *Burke*, Centricity alleges that BTI performed an affirmative and intentional act of converting the funds for its own use. Centricity alleges that BTI not only failed to use the Program Launch Funds pursuant to the Program Agreement but affirmatively used these funds "for its own purposes, including to create and develop its own product and to market, promote and sell similar service contracts from one of Centricity's competitors." Doc. 1 ¶ 43. Centricity also alleges that BTI entered

the Program Agreement with the intention of using the Program Launch Funds for its own purposes. Doc. 1 ¶ 14. These allegations go beyond a failure to perform an obligation of the Program Agreement. The Complaint sufficiently alleges the embezzlement of the Program Launch Funds and falls under the first exception to the independent tort doctrine identified in *Pharma Funding*. *See Pharma Funding, LLC*, 2021 WL 1166051 at *7. Therefore, the conversion and civil theft claims are not barred by the independent tort doctrine.

### c. Count III (Civil Theft)

#### i. Rule 12(b)(6)

BTI argues that Centricity has failed to state a claim for civil theft under Fed. R. Civ. P. 12(b)(6). Doc. 13 at 11. Specifically, BTI argues that Centricity fails to assert (1) an intricate sophisticated scheme of deceit and theft; (2) embezzlement of funds from a segregated and identifiable account; and (3) the intent to commit theft prior to the actions. *Id.* at 12.

Under Florida law, "[t]o establish a claim for civil theft, a party must prove that a conversion has taken place and that the accused party acted with criminal intent." *Gasparini*, 972 So.2d at 1056. To establish a claim for conversion, a party must show that "the defendant exercised a positive, overt act or acts of dominion or authority over the money or property in question, which was inconsistent with and adverse to the rights of the true owner." *Orozco v. McCormick 105, LLC*, 276 So. 3d 932, 935 (Fla. 3d DCA 2019).

First, Defendant argues that Plaintiff failed to allege an intricate sophisticated scheme of deceit and theft. "Where the property at issue is also the subject of a contract between the parties, a civil theft claim requires additional proof of 'an intricate sophisticated scheme of deceit and theft.'" *Epoch Int'l Partners, LLP v. Bigfoot Inc.*, 587 F. Supp. 3d 1214, 1221 (S.D. Fla. 2022) (citing *Gersh v. Cofman*, 769 So. 2d 407, 409 (Fla. 4th DCA 2000). In *Ramjeawan v. Bank of America Corp.*, 2009 WL 10700596, at *1–2 (S.D. Fla. Dec. 7, 2009), the court found that an intricate sophisticated scheme of deceit and theft was sufficiently alleged where the complaint stated that unauthorized withdrawals were made from the plaintiffs' accounts, the defendant bank failed to provide the plaintiffs with account statements from the relevant time period, and the defendant failed to open an investigation into the plaintiffs' report of fraud.

Here, Centricity alleges that BTI falsely claimed that it launched its program to sell Centricity service contracts to its customers. Doc. 1 ¶ 13. Centricity alleges that BTI lied about developing a program to sell Centricity service contracts in an effort to obtain the Program Launch Funds, which was used by BTI to further develop its own product and to market the products of Centricity's competitors. *Id.* ¶¶ 14–15, 25, 48–50. Plaintiff also alleges that BTI misrepresented its sales efforts, falsified business plans with projections it knew it could not meet, and lied about signing popular celebrities such as Travis Scott and Ice Spice to market Centricity services *Id.* ¶¶ 16–25. These facts sufficiently allege an intricate sophisticated scheme of deceit and theft.

Next, BTI argues that Centricity has failed to allege an embezzlement of funds from a segregated and identifiable account. Embezzlement of funds from a segregated and identifiable account is not an element of civil theft. BTI cites *Pharma Funding* to support its claim that Centricity must show that it embezzled funds from a segregated and identifiable account. *See Pharma Funding*, 2021 WL 1166051 at *6. However, in that case the plaintiff was required to show the embezzlement of funds *or* funds in a segregated and identifiable account as an exception to the independent tort doctrine. BTI confuses the independent tort doctrine's exceptions as elements for civil theft. Centricity has already pled the embezzlement of funds, s*ee supra* Section III(b), thus BTI's argument fails.

Last, BTI argues that Centricity has failed to assert that Defendant had the intent to commit theft. "[A] felonious intent to steal is a necessary element of proof" for a civil theft claim. *Lewis v. Heartsong, Inc.*, 559 So. 2d 453, 454 (Fla. 1st DCA 1990); *see also Heldenmuth v. Groll*, 128 So. 3d 895, 895–96 (Fla. 4th DCA 2013) (finding the complaint stated a cause of action for civil theft where the "complaint alleged that the Defendants knowingly and intentionally disbursed the escrow funds for purposes other than intended by the escrow agreement"). "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9. Here, Centricity alleges "BTI had no intention of utilizing the Program Launch Funds" pursuant to the Program Agreement "but rather, entered into the Program Agreement to obtain the Program Launch Funds to use for BTI's own purposes and for reasons unauthorized by the Program Agreement." Doc. 1 ¶ 1. Therefore, Centricity has

adequately pled intent to commit theft. Centricity successfully states a claim for civil theft under Fed. R. Civ. P. 12(b)(6).

### ii.  Rule 9(b)

BTI argues that Count III (Civil Theft) should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 9. Doc. 13 at 14. BTI contends that Count III (Civil Theft) makes a claim for fraud, which makes Rule 9 the applicable pleading standard. BTI further argues that Rule 9 imposes a heightened pleading standard, which Centricity has not met.

"Claims sounding in fraud, including claims for fraud in the inducement and civil theft, are subject to the heightened pleading requirements of Rule 9(b)." *Steel Media Grp., LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043, at *3 (S.D. Fla. Jan. 6, 2023), *report and recommendation adopted*, No. 1:22-CV-21780, 2023 WL 1332832 (S.D. Fla. Jan. 31, 2023). Under the heightened pleading requirements of Rule 9(b), "a plaintiff must allege: (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled [the plaintiff]; and (4) what the defendant[] gained by the alleged fraud." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citation modified). "The purpose of Rule 9(b)'s particularity requirement is to alert defendants to the precise misconduct with which they are charged." *Willis of Fla., Inc. v. All Risks, Ltd.*, No. 2:12-CV-14148, 2012 WL 5504786, at *5 (S.D. Fla. Nov. 13, 2012) (citation modified) (finding plaintiff met the pleading requirements under Rule 9(b) where it attached the email of the alleged misrepresentation to its complaint).

13

Defendant is correct that Plaintiff's claim for civil theft falls squarely in the heightened pleading standard under Rule 9(b). Centricity's civil theft claim sounds in fraud because it alleges that BTI obtained the Program Launch Funds through false pretenses. Doc. 1 ¶ 48.

Here, Centricity has met the heightened pleading standard under Rule 9(b). Centricity alleges that BTI had no intention of utilizing the Program Launch Funds pursuant to the Program Agreement but rather BTI entered into the Program Agreement to use the Program Launch Funds for its own purposes. *Id.* ¶ 14. Centricity attached multiple exhibits of the false statements that it alleges BTI made as part of its scheme. *See* Docs. 1-4, 1-5, 1-6. In one exhibit, Centricity emails BTI on April 26, 2024, asking BTI to confirm once it has officially launched the program selling Centricity service contracts and BTI responds the same day stating that they were "live." Doc. 1-4. As a result, Centricity issued the remaining payment of $500,000 to BTI for the Program Launch Fund. Doc. 1 ¶ 13; Doc. 1-4. Centricity alleges that BTI misled it about going "live" because BTI had not even developed its program to sell Centricity service contracts at that point. Doc. 1 ¶ 15. In another exhibit, BTI emails Centricity on June 30, 2024, a sales plan for Centricity's service contracts, which included officially signing Travis Scott and Ice Spice to market Centricity's services. Doc. 1-6. Centricity alleges that this sales plan was misleading and BTI lied about signing celebrities such as Travis Scott and Ice Spice. Doc. 1 ¶¶ 16–20. Centricity has sufficiently alerted BTI to the precise misconduct with which it is charged and thus, has met the heightened pleading requirements of Rule 9(b).

14

Accordingly, it is **ORDERED**:

1.      Defendant Boom! Technologies, Inc.'s Motion to Dismiss the Complaint (Doc. 13) is **DENIED**.

**DONE AND ORDERED** in Tampa, Florida on March 5, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties, if any

15